UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER MASTROBATTISTA,

               Plaintiff,

v.                                    5:15-CV-1253
                                    (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

APPEARANCES:                         OF COUNSEL:

STANLEY LAW OFFICES, LLP          STEPHANIE VISCELLI, ESQ.
  Counsel for Plaintiff
215 Burnet Ave.
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.        DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

       This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 16.)  This case has proceeded in accordance with General

Order 18.

       Currently before the Court, in this Social Security action filed by Christopher

Mastrobattista ("Plaintiff") against the Commissioner of Social Security ("Defendant" or

"the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on May 4, 1980.  (T. 70.)  He completed high school.  (T. 282.) Generally, Plaintiff's alleged disability consists of left ankle nerve damage.  (*Id.*)  His alleged disability onset date is December 10, 2008.  (T. 70.)  His date last insured is December 31, 2010.  (*Id.*)  He previously worked as a glaze engineer, landscaper, and in the fast food industry.  (T. 283.)

### B.    Procedural History

On June 15, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 278.)  Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 9, 2013, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke.  (T. 34-58.)  A supplemental hearing was held on March 19, 2014 before ALJ Koennecke.  (T. 59-69.)  On April 29, 2014, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 10-33.)  On September 16, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 16-29.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2010 and Plaintiff had not engaged in substantial gainful activity since December 10, 2008. (T. 16.) Second, the ALJ found that Plaintiff had the severe impairment of residuals of left ankle fracture with sympathetic dystrophy. (T. 16-20.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20-22.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> lift/carry 20 pounds occasionally and 10 pounds frequently; can stand or walk between two and four hours; can sit for six hours; may not climb in general or climb ladders; no running; no jumping; can occasionally navigate stairs; would have a cane in the workplace; and requires a sit/stand option. This means that [Plaintiff] needs the freedom to alternate position from sitting to standing as much or as little as he deems necessary.

(T. 22.)[1] Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 26-28.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1]     The ALJ's RFC determination combines exertional requirements of light and sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a). Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *Id.* at §§404.1567(b), 416.967(b).

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to apply the appropriate legal standards when she determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 1.02, despite the treating physician's opinion that he did meet the criteria of that Listing. (Dkt. No. 11 at 13-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ did not evaluate the medical opinion evidence according to the relevant legal standards and as a result, the RFC assessment was the product of legal error and was not supported by substantial evidence. (*Id.* at 18-20.) Third, Plaintiff argues that the ALJ did not evaluate Plaintiff's subjective statements in accordance with the relevant legal standard. (*Id.* at 20-22.) Fourth, and lastly, Plaintiff argues that the Commissioner has not met her burden at step five because the vocational expert ("VE") testimony cannot provide substantial evidence for the denial. (*Id.* at 22-23.)

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues that the ALJ accurately found that Plaintiff did not meet or medically equal Listing 1.02. (Dkt. No. 12 at 5-9 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly evaluated the medical opinions of the record and the RFC assessment was supported by substantial evidence. (*Id.* at 9-13.) Third, Defendant argues that substantial evidence supported the ALJ's credibility determination. (*Id.* at 13-15.) Fourth, and lastly, Defendant argues that the ALJ met her burden of proof at step five. (*Id.* at 15-16.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.     ANALYSIS**

**A.     The ALJ's Step Three Determination**

At step three of the sequential process, the ALJ must then determine whether Plaintiff's impairments meet the criteria of any impairment listed in Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii)(d), 416.920(a)(4)(iii)(d). The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* at §§ 404.1525(a), 416.925(a). If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. §§ 404.1509, 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience. *Id.* at §§ 404.1520(d), 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Although an ALJ may award benefits at step three, a plaintiff who fails to prove his impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at §§ 404.1520(e), 416.920(e).

Here, at step three of the sequential process, the ALJ determined that Plaintiff's impairment did not meet or equal a Listing. (T. 20-22.) The ALJ examined Plaintiff's ankle impairment under Listing 1.02: Major Dysfunction of a Joint(s). (*Id.*)

Listing 1.02 is "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The Listing provides the following for guidance regarding the criteria that Plaintiff must have an "inability to ambulate effectively":

(1) Definition: Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B2b(1)-(2).

Here, one of Plaintiff's treating orthopedists, Frederick Lemley, M.D., provided a medical source statement dated January 14, 2014. (T. 507.) The statement dealt exclusively with Listing 1.02. (*Id.*) After outlining the requirements of the Listing, the statement posed two questions: "1) Does your patient have a major dysfunction of a joint? If yes, please identify the disorder and 2) Does your patient meet the definition of inability to ambulate affectively, as described above?" (*Id.*) After the second question, the medical provider was asked to provide an explanation. (*Id.*)

Dr. Lemley checked the line indicating that "yes" Plaintiff had a major dysfunction of a joint and he identified the dysfunction as "[a]nkle arthritis; [n]erve pain." (T. 507.) Dr. Lemley did not check "yes" or "no" after the second question regarding Plaintiff's ability to ambulate effectively. (*Id.*) Dr. Lemley wrote in the explanation section: "[a]s best I can tell from walking in the office he would have an inability to walk a block at a reasonable pace on rough or uneven surfaces." (*Id.*)

The ALJ reasoned that Plaintiff's ankle impairment did not meet or equal the Listing because the record failed to show that Plaintiff had an anatomical deformity or that Plaintiff was unable to ambulate effectively. (T. 22.) In making her step three determination, the ALJ reviewed the statement provided by Dr. Lemley. (*Id.*) Ultimately, the ALJ determined that Dr. Lemley's statement was not supported by his treatment notations because the notations failed to indicate an anatomical deformity in Plaintiff's ankle; Dr. Lemley "declined" to opine that Plaintiff met the definition of "inability to ambulate affectively;" and Dr. Lemley's explanation that Plaintiff would have an inability to ambulate was "clearly speculative." (*Id.*)

In making her determination that Plaintiff did not meet the "inability to ambulate" requirement of the Listing, the ALJ also relied on medical evidence in the record that indicated Plaintiff required a cane to ambulate at one point in time; however, records also indicated he did not need a cane to ambulate.  (*Id.*)

Plaintiff argues that the ALJ erred in her step three determination because she made inaccurate statements of fact in reviewing Dr. Lemley's statement, she substituted her opinion for the opinion of Dr. Lemley, and she committed legal error in failing to seek the opinion of a medical expert.  (Dkt. No. 11 at 14-18 [Pl.'s Mem. of Law].)

As an initial matter, a step three determination is "reserved for the Commissioner" and a treating physician opinion on an issue reserved for the Commissioner is not entitled to any special significance.  The Regulations clearly state that an ALJ will use "medical sources, including [Plaintiff's] treating source, to provide evidence, including opinions, on the nature and severity of [Plaintiff's] impairment(s).  Although [an ALJ will] consider opinions from medical sources on issues such as whether [Plaintiff's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart [. . . ] *the final responsibility for deciding these issues is reserved to the Commissioner.*"  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (emphasis added).

SSR 96-5p states that "some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case" and provides as an example of such administrative finding as "[w]hether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings."  SSR 96-5p (S.S.A. July 2, 1996).

Plaintiff erroneously classifies the ALJ's step three finding, and reasoning supporting such finding, as substituting her own opinion for Dr. Lemley's opinion. Here, the ALJ considered Dr. Lemley's opinion, and other medical evidence in the record, in making a step three determination. For the reasons further stated herein, substantial evidence supported the ALJ's step three determination.

In reviewing Dr. Lemley's statement, the ALJ stated that the doctor opined that Plaintiff "only has ankle arthritis and nerve pain, rather than any gross anatomical deformity." (T. 22.) The ALJ appears to have misread Dr. Lemley statement, as he indicated in his opinion that Plaintiff did have a major dysfunction of a joint and identified the disorder as arthritis and nerve pain. (T. 507.) However, any error the ALJ made in reading Dr. Lemley's statement regarding anatomical deformity was harmless, because Plaintiff's impairment must meet all of the specified medical criteria of a Listing and the ALJ's analysis of the reminder of the Listing criteria was proper and supported by substantial evidence.

Substantial evidence supported the ALJ's determination that Plaintiff's ankle impairment did not meet Listing 1.02. Specifically, the Listing requires that Plaintiff was unable to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B2b(1)-(2). The ALJ determined that Plaintiff did not meet this criteria of the Listing because Plaintiff used a single cane to ambulate, and at times only an ankle brace. (T. 22.)

Indeed, although Dr. Lemley indicated that "as best as [he] could tell," Plaintiff would have an inability to walk a block at a reasonable pace or on rough or uneven surfaces, Dr. Lemley declined to answer whether Plaintiff met the definition of inability to ambulate effectively. (T. 507.)

Plaintiff's testimony and medical evidence in the record supported the ALJ's determination that Plaintiff was not unable to ambulate effectively under the Listing. Plaintiff testified at the hearing that using a single cane allowed him to walk farther because it took the weight off his foot.  (T. 45.)  Plaintiff informed a provider that although his overall activity level was diminished he was able to drive and took short walks for exercise daily.  (T. 347.)  Further, various providers indicated that Plaintiff was capable of walking four hours in a workday, thus indicating that Plaintiff was able to ambulate effectively.  (T. 349, 387.)  Consultative examiner, Kalyani Ganesh, M.D., observed that Plaintiff walked with a limp and had "moderate limitations" in walking.  (T. 451.)  Martin Schaeffer, M.D., noted on January 26, 2010, July 13, 2010, September 9, 2010, November 4, 2010, December 14, 2010, February 1, 2011, March 3 and 7, 2011, March 6, 2012, and May 3, 2012, that Plaintiff was able to ambulate independently.  (T. 371, 379, 380, 382, 384, 390, 394, 396, 410, 412.)  Dr. Schaeffer noted that Plaintiff's mobility and transfers were independent.  (T. 366, 367, 371, 372, 397, 408, 413.) Notations from Plaintiff's physical therapist indicated that he was able to walk without crutches on flat surfaces and short distances, but Plaintiff noted pain.  (T. 489.)  The physical therapist further noted Plaintiff used a single cane for walking longer distances or on uneven surfaces.  (*Id.*)

The record contained varying notations of Plaintiff's use of, and need for, a cane. In February 17, 2009, Plaintiff informed Daniel DiChristina, M.D., that he must utilize a cane or crutch.  (T. 353.)  However, on December 17, 2009, Plaintiff informed Charles Reina, M.D., that he did not use a cane or crutches.  (T. 341.)  Plaintiff informed providers that he was attending college in September, October and December of 2009;

January 2010; and June 2011, thus indicating any limitation in ambulation did not prevent him from carrying out daily activities. (T. 342, 366, 370, 371, 386, 436.)

Plaintiff next argues that the ALJ was required to call a medical expert to evaluate Plaintiff's impairments at step three. (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].) However, the Regulations do not require that the ALJ seek an opinion of a medical expert at step three. 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii).

Therefore, substantial evidence in the record supported the ALJ's determination that Plaintiff did not meet or equal Listing 1.02 because the Plaintiff did not prove that his ankle impairment impacted his ability to ambulate to the extent required by the Listings. *See DiPalma v. Colvin*, 951 F. Supp. 2d 555, 572 (S.D.N.Y. 2013) (collecting cases). Therefore, it is recommended that the ALJ's step three determination be upheld.

**B.    The ALJ's Evaluation of the Medical Opinion Evidence and RFC Determination**

Plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is Plaintiff's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of Plaintiff's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009). In determining Plaintiff's RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, Plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) .

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

In general, Plaintiff argues that the ALJ erred in weighing the medical opinion evidence in the record and therefore the RFC determination is unsupported. (Dkt. No. 11 at 18-20 [Pl.'s Mem. of Law].)

Plaintiff appears to argue that the ALJ erred in her analysis of the opinions from Plaintiff's Workers' Compensation physicians because the ALJ simultaneously relied on various opinions indicating Plaintiff was capable of some work and rejected opinions that Plaintiff was "100%" disabled. (Dkt. No. 11 at 19 [Pl.'s Mem. of Law].)

As articulated by Defendant, opinions that a plaintiff is disabled are not binding on the Commissioner and therefore the ALJ did not err in affording those opinions "no weight." (Dkt. No. 12 at 9-10 [Def.'s Mem. of Law].) The ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d), 416.927(d). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight). Therefore, the ALJ did not err in affording the determinations of various Workers' Compensation physicians no weight, because a doctor's opinion regarding the disability of a plaintiff is not binding on the ALJ.

The ALJ's RFC determination was made in accordance with the Regulation and supported by substantial evidence. In making her RFC determination the ALJ relied on

the medical opinions of Plaintiff treating physicians, the consultative examiner, and the non-examining State agency medical examiner, affording all the opinions "some weight."  (T. 23-25.)

Plaintiff's various treating physicians provided specific functional work limitations over the course of treating Plaintiff's work related injury.  On July 29, 2009, Dr. Reina opined that Plaintiff could sit/stand at a ratio of 4:1; he could not stand greater than 15 to 20 minutes at a time; he could not climb; he could not work on irregular surfaces; he could not jump, squat, or kneel; he could push, pull, carry or lift up to, but not exceeding, 10 to 15 pounds.  (T. 338.)  On August 10, 2010, Daniel Carr, M.D., opined that Plaintiff could not perform "repetitive loading of the ankle such as running and jumping, no sustained squatting."  (T. 349.)  Dr. Carr opined that Plaintiff could not work at heights and was limited to walking no more than four hours per work shit.  (*Id.*)  Dr. Carr stated that Plaintiff should avoid lifting and carrying more than 20 pounds.  (*Id.*)  On June 7, 2011, Dr. Carr opined  that he would impose the same restrictions as those outlined in his August 2010 statement.  (T. 387.)  Dr. Lemley opined on various occasions that Plaintiff was capable of performing "sedentary work."  (T. 417, 469, 478, 486.)

Dr. Ganesh opined that Plaintiff had no limitations for sitting or the use of his upper extremities.  (T. 451.)  Dr. Ganesh further opined that Plaintiff had "moderate limitations" to standing, walking, and climbing.  (*Id.*)  Non-examining State agency medical consultant, Dr. Putcha, reviewed Plaintiff record on August 13, 2012.  (T. 447.)  Dr. Putcha and opined that if Plaintiff was ambulatory he could perform sedentary work.  (T. 446.)

Therefore, the medical opinion evidence in the record supported the ALJ's RFC determination that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand or walk between two and four hours; sit for six hours; cannot climb, run, jump; can occasionally navigate stairs; required a cane; and required a sit/stand option at will. (T. 22.)

Plaintiff argues that the ALJ's RFC determination that Plaintiff required a sit/stand at will option was made in error because the ALJ failed to articulate the frequency of the need to sit and stand. (Dkt. No. 11 at 19 [Pl.'s Mem. of Law].) To be sure, the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. SSR 96-9p (S.S.A. July 2, 1996). Here, the ALJ did articulate the frequency at which Plaintiff needed to change positions, the ALJ stated that he needed to change positions "at will." (T. 22.) Courts have held that although the term "at will" is not specific in terms of a time frequency, an RFC determination that a plaintiff must sit/stand at will satisfies the frequency requirement because it is the most flexible of standards. *Magee v. Astrue,* 2008 WL 4186336, *7 (N.D.N.Y. Sept.9, 2008) ("Although the ALJ's RFC finding did not specifically state the frequency with which Plaintiff must alternate between sitting and standing in terms of hours, the ALJ did determine that Plaintiff must be able to alternate positions 'at will'-the most flexible of standards-in order to meet the exertional requirements of sedentary work."). Therefore, the ALJ's sit/stand at will limitation was sufficiently specific.

Overall, the ALJ's RFC determination was supported by the various medical opinions in the record. An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)

("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Further, the ALJ's determination that Plaintiff required a sit/stand option at will was specifically sufficient.  Therefore, it is recommended that the ALJ's RFC determination be upheld.

### C.    The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929.  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20

C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms was "only partially credible." (T. 25.) The ALJ stated that Plaintiff's credibility was enhanced because Plaintiff received treatment for his impairments and Plaintiff attempted to work. (*Id.*) However, the ALJ reasoned that Plaintiff was less credible because he was able to attend classes and he intended to return to work in a position that did not require a lot of standing. (T. 25-26.)

Plaintiff argues that the ALJ erred in her credibility determination because the ALJ could not simultaneously determine that Plaintiff's testimony that he had good days

and bad days to be credible and that Plaintiff was overall only partially credible. (Dkt. No. 11 at 21-22 [Pl.'s Mem. of the Law].) Plaintiff also argues that the ALJ failed to provide a reason as to why Plaintiff's activities of taking classes and seeking employment was inconsistent with his claim of disability. (*Id.* at 22.) As outlined by the Defendant, the ALJ properly concluded that Plaintiff's activities of daily living conflicted with his statements and the rest of the opinion evidence in the record. (Dkt. No. 12 at 13-14 [Def.'s Mem. of Law].)

Here, the ALJ properly evaluated Plaintiff's credibility. The ALJ did not err in taking into consideration that Plaintiff attended classes from September 2009 to at least January 2010 as a factor her credibility determination. *See Penfield v. Colvin*, 563 F. App'x 839, 840-841 (2d Cir. 2014) ("In addition, Penfield's testimony that she could not sit for more than five minutes at a time during the relevant period and that the combination of her pain and the medications she took for that pain made her unable to concentrate is inconsistent with the fact that, during that same time, she successfully completed a computer training course that required her to take four-hour classes three days per week.").

Further, the ALJ properly took into consideration Plaintiff's job seeking behavior as evidence that Plaintiff's testimony was not entirely credible. Plaintiff essentially testified that his ankle impairment prevented him from performing substantial gainful employment because he could not sit or stand the required amount of time; however, Plaintiff informed Dr. Schaeffer that he could work in the union representative job because it required minimal standing. (T. 413.) Therefore, the ALJ did not err in taking into consideration Plaintiff's activities of attending classes and seeking employment in

making her credibility determination, because these activities were inconsistent with Plaintiff's testimony that his ankle condition was disabling.  For the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's credibility determination be upheld.

### D.    The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work."  *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir. 2010)).  A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis."  *Bapp* 802 F.2d at 605-606.  Further, "the mere existence of a non-exertional impairment does

not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Here, at step five, the ALJ relied on VE testimony in order to find Plaintiff capable of performing work that exists in significant numbers in the national economy. (T. 61-68.) The ALJ presented a hypothetical, which ultimately became her RFC determination, to a VE. (T. 64-66.) Plaintiff argues that the ALJ erred in his step five determination because the hypothetical presented to the VE did not accurately and completely describe Plaintiff's limitations. (Dkt. No. 11 at 22-23 [Pl.'s Mem. of Law].)

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). Therefore, it is recommended that the ALJ's step five determination be upheld.

 **ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:      December 14, 2016

                                          William B. Mitchell Carter
                                          U.S. Magistrate Judge